# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ANDRE MICHAEL LAFONTAINE III,

    Defendant.

No. 15-CR-77-LRR

**ORDER**

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.   RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . *1*

III.  ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

    A.   *Matters in Agreement* . . . . . . . . . . . . . . . . . . . . . . . . *3*
    B.   *Matters in Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        1.   *Purported threat to Paul De Young* . . . . . . . . . . . . . . . . . *4*
        2.   *Judge Ahlers's testimony* . . . . . . . . . . . . . . . . . . . . . *6*
        3.   *Defendant's interactions with the FBI* . . . . . . . . . . . . . . . *7*
        4.   *Defendant's audio recordings* . . . . . . . . . . . . . . . . . . . *9*
        5.   *Events underlying Defendant's legal claims* . . . . . . . . . . . *11*

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

## I. INTRODUCTION

The matters before the court are the government's "Motion in Limine" ("Government Motion") (docket no. 16), Defendant Andre Michael LaFontaine III's "Motion in Limine" ("Defense Motion") (docket no. 18) and the government's "Motion to Quash Trial Subpoenas" ("Motion to Quash") (docket no. 36).

## II. RELEVANT PROCEDURAL HISTORY

On August 12, 2015, the grand jury returned a one-count Indictment (docket no. 2), charging Defendant with transmitting a threatening communication in interstate commerce,

in violation of 18 U.S.C. § 875(c). On October 1, 2015, the government filed the Government Motion. On October 2, Defendant filed the Defense Motion. On October 7, 2015, the government filed a "Response to Defendant's Motion in Limine" ("Government Response") (docket no. 33). On October 8, 2015, the government filed the Motion to Quash. The same day, the court held the Final Pretrial Conference, at which the parties addressed their motions. *See* October 8, 2015 Minute Entry (docket no. 37).

### III. ANALYSIS

In the Government Motion, the government requests the following pretrial evidentiary rulings: (1) exclusion of Defendant's use of his own self-serving out-of-court statements and out-of-court statements made by others, which were captured as audio recordings by Defendant; (2) admission of evidence relating to two of Defendant's prior convictions and Defendant's post-conviction conduct, but exclusion of any reference to government officials' misconduct or corruption alleged by Defendant; (3) exclusion of evidence relating to the affirmative defenses of justification, necessity, coercion, or duress; (4) exclusion of evidence of Defendant's reputation or character for non-violence; (5) exclusion of evidence or argument proposing jury nullification; and (6) exclusion of evidence or argument related to the punishment Defendant may receive if convicted. *See* Government Motion at 1-2.

In the Defense Motion, Defendant requests pretrial evidentiary rulings excluding the following: (1) evidence that Defendant previously threatened pro se law clerk Paul De Young; (2) evidence that the Iowa Falls Police Department maintained a binder dedicated to compiling incidents involving Defendant; (3) evidence that Defendant previously threatened a person named Gregory Ogaard; (4) evidence relating to an Eldora judge's reaction to Defendant's alleged threats; (5) evidence that Defendant wrote a letter to the Federal Bureau of Investigation; (6) evidence that Defendant maintained a list of persons, organizations and institutions that had offended him; (7) evidence that Defendant's family

2

has expressed concern about Defendant's behavior and mental health; and (8) evidence of drug paraphernalia or marijuana found at Defendant's residence. *See* Defense Motion 1-2.

In the Motion to Quash, the government seeks to quash Defendant's subpoenas issued to Iowa Falls, Iowa, police officers Lance Lemke and Joe Metz and FBI Special Agent Craig Tomlinson.

### A. *Matters in Agreement*

According to the Government Response and the parties' statements at the Final Pretrial Conference, the parties agree on numerous issues raised in the motions in limine.

Consistent with requests made in the Defense Motion, the government will not introduce evidence of the following: (1) a binder that the Iowa Falls Police Department maintained to keep track of incidents involving Defendant; (2) threats allegedly communicated by Defendant to Gregory Ogaard; (3) a list created by Defendant to catalog persons and entities that had offended him; (4) Defendant's mother and brother's concerns about Defendant's mental health; and (5) marijuana and drug paraphernalia seized from Defendant's residence. *See* Government Response at 3-4. Despite agreeing not to introduce such evidence in its case in chief, the government upheld the possibility that it would offer the evidence as rebuttal to Defendant's evidence at trial. *See id.* (repeatedly clarifying that the government will not offer certain evidence "in its case in chief"). In such event, the court will address the evidentiary issues at trial.

Consistent with requests made in the Government Motion, Defendant stated at the Final Pretrial Conference that he will not: (1) pursue justification, necessity, coercion or duress defenses; (2) offer evidence of Defendant's reputation or character for non-violence; (3) argue in favor of jury nullification; or (4) offer evidence or make arguments relating to the punishment Defendant may receive if convicted.

### B. *Matters in Dispute*

The parties dispute the following issues: (1) the extent to which evidence of Defendant's purported threat to Paul De Young may be introduced; (2) the extent to which Judge Ahlers may testify regarding his interactions with Defendant; (3) the extent to which evidence of Defendant's interactions with the FBI may be introduced[1]; (4) the admissibility of audio recordings of Defendant's conversations with various government officials; and (5) the extent to which evidence of the events underlying Defendant's disputes with government officials may be introduced.[2]

#### 1. *Purported threat to Paul De Young*

In the Defense Motion, Defendant moves to exclude evidence that Defendant threatened Paul De Young, a federal court employee. Defense Motion at 1. In the Government Response, the government states that it does not intend to introduce evidence of the substance of Defendant's purported threat to De Young, but that it does intend to introduce evidence of the subsequent investigation wherein Deputy United States Marshal Nick Bonifazi interviewed Defendant about the purported threat. Government Response at 1. More specifically, the government intends to elicit the fact that Defendant reportedly told Bonifazi that "it would be 'foolish' to threaten the court employee, and . . . 'I know better than that.'" *Id.* at 1-2. The government argues that such evidence is permissible under Federal Rule of Evidence 404(b) to show that the threat alleged in the instant prosecution was made with the requisite intent and in the absence of mistake. *Id.* at 2.

The court finds that, to the extent outlined in the Government Response, the evidence relating to Defendant's purported threat to De Young is admissible as evidence

---

[1] This issue implicates both the motions in limine and the Motion to Quash, insofar as it seeks to quash the subpoena issued to Special Agent Craig Tomlinson.

[2] This issue implicates both the motions in limine and the Motion to Quash, insofar as it seeks to quash the subpoenas issued to Officers Lance Lemke and Joe Metz.

of Defendant's intent and lack of mistake. Rule 404(b) prohibits evidence of a defendant's prior bad acts when such evidence is used to show that the defendant had a propensity for acting in such a way. Fed. R. Evid. 404(b)(1). However, evidence of a defendant's prior bad acts is admissible when introduced for non-propensity purposes—including proof of Defendant's intent, knowledge or lack of mistake—provided that the government first give reasonable notice of its use of such evidence. Fed. R. Evid. 404(b)(2). Here, the testimony the government seeks to elicit arises from Bonifazi's investigation of Defendant's purported threat to De Young. As such, the evidence implicates a prior bad act of Defendant: a prior "threat." However, given Defendant's statements that his communication with De Young did not rise to the level of a threat and that threatening De Young would be "foolish," the evidence bears on Defendant's intent and lack of mistake. Bonifazi's testimony that Defendant disputed that his communication with De Young was a threat amounts to evidence that Defendant was aware of what may or may not be considered a threat. For the government to prove that Defendant violated 18 U.S.C. § 875(c), it must prove either that Defendant intended for his communication to be threatening or that he knew the communication would be considered threatening. *See Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015). Accordingly, such evidence is admissible under Rule 404(b) as evidence of Defendant's intent or lack of mistake.

At the Final Pretrial Conference, Defendant stated that if the government were to present evidence of Bonifazi's investigation into Defendant's purported threat to De Young, then he intended to present evidence of the substance of the purported threat. Defendant claims that the substance of the communication becomes relevant for purposes of preventing the jury from speculating about the severity of Defendant's previous alleged threat. The court agrees. Further, evidence of the substance of the purported threat communicated to De Young is not inadmissible hearsay under Rule 802 because it would not be introduced for truth of the communication's contents, but would instead be

5

introduced to place Bonifazi's investigation in context. *See* Fed. R. Evid. 802 (excluding hearsay); Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement offered for its truth).

Accordingly, Defendant's request to exclude evidence of Defendant's purported threat communicated to De Young shall be denied.

### 2. *Judge Ahlers's testimony*

In the Defense Motion, Defendant moves to exclude evidence that a judge in Eldora, Iowa, "expressed concern for his . . . safety in response to . . . Defendant's alleged threat." Brief in Support of the Defense Motion (docket no. 18-1) at 4. In the Government Response, the government states its intention to offer testimony from Iowa District Associate Judge Paul Ahlers, who presided over Defendant's state criminal trial in Eldora, Iowa, and who was aware of Defendant's dissatisfaction with his conviction. Government Response at 3. At the Final Pretrial Conference, the government elaborated that it seeks to offer Judge Ahlers's testimony to provide necessary context for the communication at issue in the case. More specifically, because the communication refers to "judges in Eldora" and charges of corruption relating to the caller's status as a "co-state litigant," the government claims that Judge Ahlers's testimony will flesh out Defendant's relationship to the communication.

To the extent that the government intends to use Judge Ahlers's testimony for the purpose of context, the court finds such evidence admissible. *See United States v. Williams*, 796 F.3d 951, 961-62 (8th Cir. 2015) (holding "context" evidence to be admissible to "complete[] the story or provide[] a total picture of the charged crime" (quoting *United States v. Brooks*, 715 F.3d 1069, 1076 (8th Cir. 2013))). However, to the extent that the government intends to elicit testimony that Judge Ahlers feared for his safety after Defendant's alleged threat, the court agrees with Defendant that such evidence is inadmissible. A recipient's reaction to an alleged threat is not relevant to the charge of

communicating threats. *Elonis*, 135 S. Ct. at 2012 (rejecting a standard that makes a person's response to an alleged threat a necessary element of the offense). Therefore, because Judge Ahlers's fear for his safety does not correspond to an essential element of the offense, its minimal probative value is substantially outweighed by the danger that Defendant will be unfairly prejudiced by the jury's consideration of Judge Ahlers's fearful response to the communication. *See* Fed. R. Evid. 403 (permitting the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

Accordingly, Defendant's request to exclude evidence that Judge Ahlers feared for his safety after learning of Defendant's alleged threat shall be granted.

### 3. *Defendant's interactions with the FBI*

In the Defense Motion, Defendant moves to exclude evidence related to a letter Defendant purportedly wrote to the FBI. Brief in Support of the Defense Motion at 4. In the Government Response, the government states that it does not intend to offer evidence relating to the substance of the letter, but does intend to offer evidence "to show [D]efendant was upset with the FBI, and specifically Agent Tomlinson." Government Response at 3. Relatedly, while Defendant seeks to exclude the contents of the letter he wrote to the FBI, he has subpoenaed Special Agent Tomlinson for the purpose of eliciting testimony about Defendant's civil rights claims and challenging Tomlinson's determination that they lacked merit. *See* Defendant's Trial Memorandum (docket no. 26) at 3. The government argues that its overview of Defendant's frustration with the FBI provides necessary context for the alleged threat at issue, which refers to the FBI and to Tomlinson specifically. Government Response at 3. However, the government further argues that Defendant's proposed inquiry into the merits of Defendant's civil rights claims, or Tomlinson's rationale for not taking action on the claims, amounts solely to evidence that Defendant was justified in making the eventual alleged threat. *See* Motion to Quash at 2.

7

At the Final Pretrial Conference, Defendant conceded that a justification defense is unsupported in this case.

The court finds that the government's proposed evidence providing a broad overview of Defendant's frustration with the FBI is admissible. Like the proposed testimony of Judge Ahlers, evidence that Defendant had prior interactions with the FBI provides context for the alleged threat and its references to the FBI and to Tomlinson. *See Williams*, 796 F.3d at 961-62 (finding context evidence admissible under Rule 404(b)).

While the government's proposed overview of Defendant's interactions with the FBI can fairly be described as context evidence, Defendant's proposed evidence of the merits of his civil rights claims, as determined by Tomlinson, cannot. At the Final Pretrial Conference, Defendant characterized his proposed evidence as relevant to proving that there was a colorable basis for his civil rights claims. According to Defendant, the colorable basis for his claims is, in turn, relevant to proving that Defendant made the alleged threat for purposes of asking for help, rather than with the requisite intent to threaten. *See* Defendant's Trial Memorandum at 3. The court disagrees. While Defendant may have initiated the phone call at issue because he wished for the Department of Justice to assist him in vindicating perceived wrongs against him, his reason for communicating the alleged threat is not relevant to the offense. The question of "why" Defendant communicated the message does not impact whether he intended for the message to threaten or whether he knew that the message would be considered threatening. *See* Fed. R. Evid. 401 (defining relevant evidence as evidence that "has any tendency to make a fact [of consequence in determining the action] more or less probable"); *Elonis*, 135 S. Ct. at 2011 (identifying the mens rea for communicating threats in violation of 18 U.S.C. § 875(c) as the intent to threaten or the knowledge that a communication would be considered threatening). Even if Defendant had a sound basis for his legal claims, it would not immunize his method of pursuing those claims from criminal liability. To suggest

otherwise would implicate a justification defense, which both parties agree is not an applicable defense in this case. *Accord. United States v. Bailey*, 444 U.S. 394, 411 (1980) (stating that such defenses require a showing that there was no reasonable legal alternative to the defendant's unlawful actions). Therefore, because the factual soundness of the FBI's assessment of Defendant's civil rights claims does not weigh on Defendant's intent to threaten or his knowledge that his communication would be considered threatening, evidence to that effect is not relevant and is inadmissible at trial.

Accordingly, Defendant's request that his letter to the FBI be excluded is granted to the extent that it seeks to prevent the government from entering evidence of the substance of the letter. The government's request to introduce evidence of Defendant's actions subsequent to his state court convictions—including his interactions with the FBI—is granted, but is limited in scope to providing context for the alleged threat at issue. Evidence regarding the substance and merits, or lack thereof, of Defendant's claims and the FBI's assessment of his claims is inadmissible. Because Defendant's stated purpose for subpoenaing Tomlinson is to elicit testimony to that effect, the government's Motion to Quash shall be granted as to Tomlinson.

### 4. *Defendant's audio recordings*

In the Government Motion, the government seeks to exclude from evidence various audio recordings that Defendant made of conversations he had with government officials. Brief in Support of the Government Motion (docket no. 16-1) at 5-7. The government claims that such recordings would be inadmissible hearsay if offered by Defendant. *Id.*; *see* Fed. R. Evid. 801, 802. At the Final Pretrial Conference, Defendant argued that the recordings are not hearsay because he does not intend to offer them for their truth. Instead, Defendant stated that he wished to introduce the recordings as examples of Defendant's courteous demeanor and tone of voice, to rebut the government's narrative that Defendant grew increasingly frustrated and angry to the point of eventually issuing the

9

threat.  Defendant characterizes his use of the audio for this purpose as context evidence and, further, as evidence that Defendant lacked the requisite mental state to commit the offense.  The government characterizes such an use as character evidence reflecting on Defendant's peacefulness, and argues that such character evidence is not relevant to the charged offense because it does not require that Defendant would in fact carry out the alleged threat.

The court finds that the audio recordings are admissible as proof that Defendant lacked the requisite mental state.  For the government to prove Defendant guilty of the charged offense, it must prove that Defendant intended for the communication at issue to be threatening or knew that it would be considered threatening by the recipient.  "[C]ircumstantial evidence is most likely to be the only evidence of subjective state of mind."  *United States v. Ott*, 741 F.2d 226, 229 (8th Cir. 1984) (quoting *United States v. Wetzel*, 514 F.2d 175, 177 (8th Cir. 1975)).  To support its allegation that Defendant possessed the requisite "subjective state of mind," the government has amassed circumstantial evidence to that end.  Defendant is, in turn, entitled to provide his own circumstantial evidence in his defense.  Because a substantial part of the government's circumstantial evidence comes from its theory that Defendant grew frustrated with the way government officials handled his legal claims and that he issued a threat to prompt them to action, evidence of Defendant's other interactions with government officials is relevant to rebut that theory.  As the Supreme Court held in *Elonis*, a conviction for communicating threats cannot by grounded solely on "what the statement conveys," but instead requires proof of a mental state.  *See Elonis*, 135 S. Ct. at 2008, 2012 (noting that, while the word "threat" literally relates to the meaning of a statement alone, a conviction for communicating threats "does not turn solely on the results of an act without considering the defendant's mental state").  Therefore, the mere words comprising Defendant's alleged threat are not dispositive of his mental state, and circumstantial evidence that he was not

frustrated or angry in his interactions with government officials is relevant to rebut the government's theory of Defendant's mental state. As such, the audio recordings are admissible for that limited purpose.

Accordingly, the government's request that evidence of Defendant's audio recordings be excluded shall be denied. Evidence of the audio recordings is admissible, not for truth, but as circumstantial evidence to rebut the government's theory of Defendant's mental state.

### 5. *Events underlying Defendant's legal claims*

In the Government Motion, the government seeks to prevent Defendant from offering evidence of the perceived misconduct of government officials against Defendant. Brief in Support of the Government Motion at 8. Defendant subpoenaed Iowa Falls police officers Lance Lemke and Joe Metz "to examine [them] regarding their use of force against . . . Defendant" and to admit portions of a video recording that captured their arrest of Defendant for OWI and eluding. Defendant's Trial Memorandum at 2. The government argues that such evidence is not relevant and implies a justification defense that both parties concede is unwarranted. Defendant argues that the evidence is necessary to prevent prejudice that would occur if the jury concluded that Defendant lacked a basis for pursuing his legal claims consistently for numerous years.

The court finds evidence of the alleged misconduct of the Iowa Falls police to be not relevant and, therefore, inadmissible. As noted above, a brief overview of Defendant's interactions with government officials is warranted to provide context for the alleged threat at issue in this case, which includes references to officials that Defendant interacted with during his pursuit of legal claims. However, the court agrees with the government that the merit of Defendant's claims goes beyond context and implies that Defendant was justified in communicating threats to pursue relief on his claims. As the parties agreed at the Final Pretrial Conference, and as noted above, the court will not permit justification arguments.

*Accord. Bailey*, 444 U.S. at 411 (stating that the justification defenses of duress and necessity require a defendant to show that there was no reasonable legal alternative to the defendant's unlawful actions).  Furthermore, the court notes that evidence of the merits of Defendant's legal claims is irrelevant to both parties' cases.  Any evidence of Defendant's claims or prior litigation is to be made in a summary fashion for the sole purpose of providing context for the conduct alleged in the Indictment.

Accordingly, the government's request that evidence of alleged misconduct underlying Defendant's civil rights claims be excluded shall be granted.  Because Defendant's stated purpose for subpoenaing Officers Lemke and Metz is to elicit evidence to that effect, the government's Motion to Quash shall be granted as to Officers Lemke and Metz.

## IV.  CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1) The Government's Motion in Limine (docket no. 16) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **DENIED** as to the exclusion of Defendant's audio recordings, to the extent that the recordings are not offered for their truth.

(2) Defendant's Motion in Limine (docket no. 18) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **DENIED** as to the exclusion of evidence relating to the purported threat communicated to Paul De Young.

(3) The Government's Motion to Quash Trial Subpoenas (docket no. 36) is **GRANTED**.

Each party is charged with the responsibility of cautioning its witnesses as to the substance of this Order.  If during the presentation of evidence a party believes that a prohibited subject has become relevant, the party may request an opportunity to argue relevance outside the presence of the jury.

**DATED** this 14th day of October, 2015.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA